## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

CANAAN FLADGER,

    Plaintiff,

    v.

STATE OF MARYLAND,
OFFICER BRUCE MERRITT,
WARDEN WALTER WEST,
COMMISSIONER JOHN DOE,
EXECUTIVE DIRECTOR JOHN DOE,

    Defendants.

Civil Action No.:  SAG-20-2043

### MEMORANDUM

In response to the above entitled civil rights action, defendants State of Maryland, Warden Walter West, and Officer Bruce Merritt[1] filed a motion to dismiss or for summary judgment.  ECF 12.  Plaintiff Canaan Fladger opposes the motion.  ECF 14.  No hearing is necessary.  *See* Local Rule 105.6 (D. Md. 2018).  For the reasons that follow, the complaint shall be dismissed.

### BACKGROUND

**I.**     **Complaint Allegations**

Plaintiff Canaan Fladger, an inmate committed to the Maryland Division of Correction and confined in Eastern Correctional Institution ("ECI"), filed this complaint asserting that defendants mishandled administrative remedy procedure complaints ("ARPs") that he attempted to file.  ECF 1 at 5.  Specifically, Fladger claims that on January 30, 2020, he filed an ARP against Correctional Officer Floyd because Floyd threw Fladger's "catalog mail order on the floor in the corridor" after Fladger asked Floyd

---

[1]     The Clerk is directed to correct the docket to reflect the full and correct spelling of defendants' names.

to turn the order in for him.  *Id*.  Fladger submitted his ARP to "defendant ONE"[2] but later found out, through talking with Lt. Derr, that his ARP was never turned in.  *Id*.  Fladger states that Lt. Derr advised that if he felt strongly about it, he should resubmit the ARP.  *Id*.

On February 19, 2020, Fladger re-filed the ARP regarding Officer Floyd's actions.  The ARP was submitted to Officer Milbourn on February 22, 2020.  ECF 1 at 5.  Additionally, Fladger filed an ARP against, presumably, Officer Merritt for failing to turn in the ARP submitted to him on January 30, 2020.  *Id*.  Warden West failed to respond to the ARP in the 30-day time frame required by Maryland Regulations.  *Id*.

On April 22, 2020, Fladger filed an appeal with the Commissioner of Correction.  ECF 1 at 5.  Fladger does not explain which ARP he appealed.  *Id*. On April 30, 2020, Fladger received a response from the Commissioner acknowledging receipt of the appeal.  ECF 1 at 5.

On May 7, 2020, Fladger received a response from Warden West dismissing his ARP as repetitive and previously resolved in ARP-ECI-0170-20.  ECF 1 at 5.  Fladger maintains that he "never filed a[n] ARP under the Case No. ECI.0170.20 concerning defendant ONE."  *Id*.  Instead, he asserts that the only ARP filed regarding this defendant, who he again does not identify by name, was filed in ARP-ECI-0429-20.  *Id*.  Fladger requested a copy of ARP-ECI-0170-20, but Warden West never provided it.  *Id*. at 6.

Fladger filed an appeal of the Warden's response provided in ARP-ECI-0429-20 to the Commissioner of Correction but did not receive a response within 30 days as required by applicable regulations.  ECF 1 at 6.  Fladger does not provide the date he submitted the appeal.  *Id*.  Fladger filed an appeal of the non-response of the Commissioner with the Inmate Grievance Office ("IGO").  *Id*.

According to Fladger there is a pattern of non-response by "the Administration" when ARPs are filed regarding correctional officers' conduct.  ECF 1 at 6.  He states that this pattern violates "an inmates

---

[2]     Fladger does not specifically explain which of the defendants is "defendant ONE," although the complaint caption names "Merritt ONE." ECF 1 at 5.

(sic) constitutional rights to redress and due process." *Id*.  He claims that the failure to turn in the ARP he submitted and Warden West's failure to respond to his ARPs violated his right to redress and due process under the First and Fourteenth Amendments to the United States Constitution.  *Id*. at 6-8.  Fladger adds that the conduct of defendants also violates the Maryland State Constitution which guarantees his right to a remedy for injury through Art. 19 of the Declaration of Rights.  *Id*. at 8-9.  Fladger seeks unspecified compensatory and punitive damages as relief.  ECF 1 at 9.

## II.   **Defendants' Response**

Defendants have provided verified business records in support of their motion, including copies of Fladger's ARPs at issue in his complaint.  ECF 12-2.  In ARP-ECI-0171-20 submitted on February 19, 2020, Fladger complained that Officer Floyd threw his mail on the floor after he gave it to her to turn in for him because "officers had not been walking around upstairs."  ECF 12-2 at 6-7.  He further claimed that Floyd had told other officers that he had been "smart" with her but maintained this was simply Floyd's way of trying to justify her actions.  *Id*. at 7.  When he returned to his cell, he filed an ARP about Floyd's actions and gave it to Officer Merritt, who did not turn the ARP in as required.  *Id*.  He claimed he suffered mental anguish as a result.  *Id*.  The receipt portion (which Fladger may not have received) includes instructions from the ARP coordinator to Fladger to resubmit the ARP with information on the shift and unit as well as the officers involved.  *Id*. at 6.  Additionally, Fladger was told to inform the ARP coordinator if he was seen by medical.  *Id*.

In a second ARP dated February 20, 2020, which was assigned  number ARP-ECI-0170-20, Fladger complained that he gave an ARP to Officer Merritt on January 30, 2020 for the purpose of turning it in to Lt. Derr, but he later found out from Lt. Derr that it was not received.  *Id*. at 3-4.  The Facility ARP Coordinator acknowledged receipt of the ARP on February 24, 2020, and dismissed the ARP pending receipt of additional information with instructions for Fladger to rewrite the ARP to "include unit, shift &

date [Fladger] talked to Lt. Derr." *Id*. at 3.  Fladger was also asked to include information about whether he had been seen by the medical staff for his "pain and anguish." *Id*.

In another ARP dated February 20, 2020, which was assigned case number ARP-ECI-0429-20, Fladger again complained about Officer Merritt's failure to process the ARP provided to him on January 30, 2020.  ECF 12-2 at 9.  This ARP was dismissed on May 7, 2020, as repetitive of ARP-ECI-0170-20. *Id*.  It appears, however, that Fladger may have intended this ARP to be an appeal and not a new ARP.

In a fourth ARP which is dated February 19, 2020 and assigned case number ARP-ECI-0430-20, Fladger again complained about Officer Floyd throwing his mail on the ground.  ECF 12-2 at 11.  This ARP, which also appears to have been intended as an appeal, was dismissed on May 7, 2020, because it was repetitive of ARP-ECI-0171-20.

Defendants further explain that Officer Merritt is not authorized to accept ARPs from inmates for processing.  Completed ARP forms are collected by the Housing Unit Manager, who provides them to the dayshift Officer in Charge or the dayshift Supervisor for signature.  ECF 12-2 at 13.  Officer Merritt was not the Housing Unit Manager.  *Id.* at 1, ¶ 3.

## STANDARD OF REVIEW

Pursuant to Federal Rule of Civil Procedure 56(a), "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  The Court should "view the evidence in the light most favorable to . . . the nonmovant, and draw all reasonable inferences in her favor without weighing the evidence or assessing the witnesses' credibility."  *Dennis v. Columbia Colleton Med. Ctr., Inc*., 290 F.3d 639, 645 (4th Cir. 2002).  Importantly, "the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no

4

genuine issue of material fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986) (emphasis in original).

The Court maintains an "affirmative obligation . . . to prevent factually unsupported claims and defenses from proceeding to trial." *Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 526 (4th Cir. 2003) (internal quotation marks omitted) (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778-79 (4th Cir. 1993), and citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986)).  "A party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of his pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'" *Id*. (quoting Fed. R. Civ. P. 56(e)).  A dispute of material fact is only "genuine" if sufficient evidence favoring the nonmoving party exists for the trier of fact to return a verdict for that party.  *Anderson*, 477 U.S. at 249-50.

## ANALYSIS

Defendants assert that (1) the complaint does not state a federal or state constitutional claim, (2) Fladger was not denied access to courts, (3) a theory of respondeat superior liability does not apply to claims raised under 42 U.S.C. § 1983, and (4) the State of Maryland is immune from suit under the Eleventh Amendment.  ECF 12-1 (memorandum in support of motion).  In his opposition response, Fladger states that inmates at ECI have "no way to seek remed[ies]" when officers do not follow policy.  ECF 14 at 1.  He takes issue with defendants' counsel "completely overlooking what Officer Merritt did" and claims he never received anything stating he was supposed to resubmit his ARPs.  *Id*.  Fladger also objects to this court requiring his payment of the full filing fee if his complaint is to be dismissed without a hearing.  *Id*. at 2.

I.      **Federal Constitutional Claims**

Fladger claims that both his First and Fourteenth Amendment rights were violated when his ARPs were not properly processed.  The Prison Litigation Reform Act ["PLRA"] requires a prisoner to exhaust administrative remedies before filing suit in federal court.  Title 42 U.S.C. § 1997e(a) provides that "[n]o action shall be brought with respect to prison conditions under § 1983 of this title, or any other Federal law by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."  The Supreme Court has interpreted the language of this provision broadly, holding that the phrase "prison conditions" encompasses "all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong."  *Porter v. Nussle*, 534 U.S. 516, 532 (2002).

Where the exhaustion provision applies to a claim, defendants are entitled to dismissal of any unexhausted claims raised in a complaint filed in this court.  *See Anderson v. XYZ Correctional Health Serv's., Inc.*, 407 F.3d 674, 681 (4th Cir. 2005) (PLRA exhaustion not a basis for *sua sponte* dismissal, but upon proof of affirmative defense raised by defendants, non-exhaustion requires dismissal).  To the extent that Fladger claims that his ARPs were not properly processed, and he has therefore been denied access to courts, he fails to provide any description of the action he would have intended to file in court. The tools required by *Bounds v. Smith*, 430 U.S. 817, 821 (1977) "are those that the inmates need in order to attack their sentences, directly or collaterally, and in order to challenge the conditions of their confinement."  *Lewis v. Casey*, 518 U.S. 343, 355 (1996).  Impairment of other capacities to litigate are consequential to incarceration and are therefore constitutional.  *Id*.  Here, the subject-matter of Fladger's ARPs do not touch upon matters related to Fladger's sentence, nor do they concern serious issues implicating his constitutionally guaranteed rights.  They only relate to his ability to have his ARPs processed by providing them to certain officers in the prison.  Further, a violation of prison policy alone

6

does not state a Fourteenth Amendment due process violation.  *See Myers v. Klevenhagen*, 97 F.3d 91, 94 (5th Cir. 1996); *Kitchen v. Ickes*, 116 F. Supp. 3d 613, 629 & n.6 (D. Md. 2015) (citing *Myers*).

To the extent that Fladger implies there is a pattern or practice of improperly disposing of ARPs which has the potential to thwart an inmate's attempt to access the courts regarding correctional officers' actions, his claim does not state a live case or controversy.  "[A]t an irreducible minimum, Article III requires the party who invokes the court's authority to show that he personally has suffered some actual or threatened injury as a result of the putatively illegal conduct of the defendant and that the injury fairly can be traced to the challenged action and is likely to be redressed by a favorable decision." *Valley Forge Christian Coll. v. Ams. United for Separation of Church & State*, 454 U.S. 464, 472 (1982) (citations and internal quotation marks omitted); *see also Lujan v. Defenders of Wildlife*, 504 U.S. 555, 559-60 (1992). Fladger's complaint has made no such showing of actual or threatened injury, does not state a viable federal constitutional claim, and must be dismissed.

## II.      State Constitutional Claim

Fladger also alleges that the failure to process his ARPs violates the Maryland State Constitution, Article 19 which provides:

> That every man, for any injury done to him in his person or property, ought to have remedy by the course of the Law of the land, and ought to have justice and right, freely without sale, fully without any denial, and speedily without delay according to the Law of the land.

Md. Const. Decl. of Rights, Art. 19.  "Where a person clearly has a right to money or property under a statute or common law principle, and no statute specifically provides for a remedy, Article 19 guarantees a common law remedy to enforce the right."  *Piselli v. 75th St. Med.*, 371 Md. 188, 206 (2002) (citing *Robinson v. Bunch*, supra, 367 Md. 432, 444 (2002)).  This court declines the opportunity to determine if Fladger has stated an Art. 19 claim.  When, as here, the federal claim is dismissed early in the case, the federal courts are inclined to dismiss the state law claims without prejudice rather than retain supplemental

jurisdiction." *Carnegie Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988) (citing *United Mine Workers of America v. Gibbs*, 383 U.S. 715, 726-727 (1966).

## III.   Immunity

In addition to the issues noted with the content of the claims raised by Fladger, the named defendants are entitled to avail themselves of an immunity defense.

### A.   Eleventh Amendment Immunity

Under the Eleventh Amendment to the United States Constitution, a state, its agencies, and its departments are immune from suits in federal court brought by its citizens or the citizens of another state, unless it consents. *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984). "It is clear, of course, that in the absence of consent a suit in which the State or one of its agencies or departments is named as the defendant is proscribed by the Eleventh Amendment." *Id*., citing *Florida Dep't of Health v. Florida Nursing Home Assn.,* 450 U.S. 147 (1981) (*per curiam*). While the State of Maryland has waived its sovereign immunity for certain types of cases brought in state courts, *see* Md. Code Ann., State Gov't § 12-202(a), it has not waived its immunity under the Eleventh Amendment to suit in federal court. "A State's constitutional interest in immunity encompasses not merely *whether* it may be sued, but *where* it may be sued." *Halderman*, 465 U.S. at 100 (emphasis in original). Thus, Fladger's claim against the State of Maryland is barred by the Eleventh Amendment.

### B.   Qualified Immunity

"Qualified immunity balances two important interests—the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009). "In particular, . . . qualified immunity protects law officers from 'bad guesses in gray areas' and it ensures that they may be held personally liable only 'for transgressing bright lines.'" *Gomez v.*

*Atkins*, 296 F.3d 253, 261 (4th Cir. 2002) (quoting *Maciariello v. Sumner*, 973 F.2d 295, 298 (4th Cir. 1992)).  The defense provides protection for public officials for mistakes of law, mistakes of fact, or a combination of the two.  *See Groh v. Ramirez*, 540 U.S. 551, 567 (2004) (Kennedy, J., dissenting). Qualified immunity is a defense from suit in its entirety, not simply a defense to liability, and its benefit is lost if a matter is improperly permitted to go to trial.  *See Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985). Resolution of whether an official is entitled to qualified immunity therefore must be determined "at the earliest possible stage in litigation."  *Hunter v. Bryant*, 502 U.S. 224, 227 (1991).

In order to determine if a public official is entitled to the protections afforded by qualified immunity, two inquiries must be addressed by this Court.  Although the Supreme Court's decision in *Saucier v. Katz*, 533 U.S. 194 (2001) directed a rigid approach to the inquiries involved, the requirement that the two-prong analysis must be "considered in proper sequence" has since been revised.  *Katz*, 533 U.S. at 200.  Courts are now "permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand."  *Pearson*, 555 U.S. at 818.

The first prong is whether ""[t]aken in the light most favorable to the party asserting the injury, . . . the facts alleged show [that] the officer's conduct violated a constitutional right[.]" *Saucier*, 533 U.S. at 201.  If the evidence establishes a violation of a constitutional right, the second prong is to assess whether the right was "clearly established" at the time of the events at issue.  *Id*.  If the right was not clearly established, the qualified immunity doctrine shields a defendant officer from liability.  The "answer to both *Saucier* questions must be in the affirmative in order for a plaintiff to defeat a . . . motion for summary judgment on qualified immunity grounds."  *Henry v. Purnell*, 501 F.3d 374, 377-78 (4th Cir. 2007) (citing *Batten v. Gomez*, 324 F.3d 288, 293-94 (4th Cir. 2003)).  "'Clearly established' means that, at the time of the officer's conduct, the law was 'sufficiently clear' that every 'reasonable official would

understand that what he is doing' is unlawful. *Dist. of Columbia v. Wesby*, _ U.S. _, 138 S. Ct. 577, 589 (2018) citing *Ashcroft v. al–Kidd*, 563 U.S. 731, 741 (2011) (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)).

The individual defendants named in Fladger's complaint are entitled to qualified immunity because there is no clearly established federal statutory or constitutional right for Fladger to have any and all complaints processed under the administrative remedy procedure. *See Wesby*, 138 S.Ct. at 589.  In other words, a reasonable official would not understand that a failure to comply with response times required by applicable state regulations, or a failure to overlook Fladger's non-compliance with the proper submission of his ARPs, was unlawful. *Id.* Without subjective knowledge, a prison official is not liable. *Farmer v. Brennan,* 511 U.S. 825, 846 (1994); *see Johnson v. Quinones,* 145 F.3d 164, 168 (4th Cir. 1998).  Denial of plaintiff's ARP requests and appeals does not alone impose liability. *Whitington v. Ortiz,* 307 Fed. Appx. 179, 193 (10th Cir. 2009) (unpublished); *Larson v. Meek,* 240 Fed. Appx. 777, 780 (10th Cir. 2007) (unpublished).

## CONCLUSION

For the reasons stated, the complaint must be dismissed by separate order which follows.  The complaint shall also be dismissed as to the unserved, unnamed defendants.

February 19, 2021                                    _____/s/_____
Date                                                           Stephanie A. Gallagher
                                                                   United States District Judge